## Norene B. Lay, Appellee, v. Robert D. Lay, Appellant.

## Gen. No. 21,782.

DIVORCE, § 110*—*when order allowing increase of alimony is improper.* On an application for increase of alimony, where divorce had been granted for the wife's fault, findings in an order increasing the amount of alimony that the husband's income had increased since the original allowance of alimony and that the amount originally allowed was insufficient to maintain the applicant according to the station of life in which she had lived prior to the divorce, *held* to be insufficient to warrant such order increasing the amount of the alimony, as the husband's means were not a controlling factor in such case, and the insufficiency of the amount allowed to maintain the applicant according to the station in life in which she had lived prior to the divorce was immaterial.

Appeal from the Circuit Court of Cook county; the Hon. JOHN P. McGOORTY, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1915. Reversed. Opinion filed March 28, 1917.

GEORGE A. TRUDE, for appellant; BENJAMIN B. KAHANE, of counsel.

ROY D. KEEHN, for appellee.

MR. JUSTICE GOODWIN delivered the opinion of the court.

The appellant seeks to reverse an order of the Circuit Court increasing the amount of alimony payable to the appellee from $300 to $350 a month. Appellant obtained a decree of divorce from appellee December 24, 1913, upon the ground of habitual drunkenness, and the allowance of $300.00 a month as alimony was made upon his statement in open court that he was willing to pay that amount. He, at the same time, stated that his income was between $20,000 and

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

$25,000 a year, and that he was worth between $100,000 and $150,000. Appellee filed her petition January 25, 1915, a little over a year after the entry of the decree, in which she set forth these facts, and alleged that his income amounted to at least $40,000 a year, and that prior to the divorce he had allowed her $500 a month in addition to various articles of value. Upon the hearing, appellant stated that his testimony upon the original hearing of the cause was that his income was between $20,000 and $25,000 a year. He further testified that for the year preceding the hearing his income had been nearly $24,000—between $23,000 and $25,000; that for 1912 his income may have been over $30,000; that prior to 1912 it was $18,000; in 1909 it was $12,000; in 1910, $15,000; in 1911, about the same; in 1912, about $28,000 or $29,000; in 1913, between $23,000 and $25,000; that in 1912 it might have been over $30,000; and that in 1914 it was about $25,000—it was less than $26,000. On the hearing, he said, he had testified that he was worth between $100,000 and $150,000. He then made a statement of his various holdings. Appellee's testimony disclosed the fact that she was not in court at the time the cause was originally heard, although she was represented in the case by counsel. She knew that the amount intended to be allowed her was $300 a month, and apparently made no objection, personally or through her counsel, and made no attempt to secure a continuance of the case until such time as she might be able to appear personally in court. The other testimony offered does not appear to be material.

The court at the conclusion of the testimony said:

"The testimony of Mrs. Lay raises a serious question in the mind of the court whether or not any increase in alimony would be of any benefit to her; she does not seem to have any rational notion of living within her income. It may be that $300 a month is not a large income, but considering her former hus-

band's income and how she lived 'it is not such a pittance as she describes it to be. I doubt very much if this court would be warranted in increasing the alimony in any event for this woman unless her expenditures were supervised in some way by some competent party. I do not see that the court would be warranted in granting the prayer of her petition or in increasing the alimony, and I do not think this court has any jurisdiction in finding any lump sum settlement. The court is most anxious to do what is for the best interests of this woman; whether or not she has by her own acts contributed to place herself in her present condition, it is the duty of this court to protect her so far as it can be done, and properly. It is a matter of sincere regret that this case was not tried upon its merits after a full hearing; of course, the court can only deal with the situation as it exists at this time. I will take the matter under advisement for a few days and counsel may come in Saturday morning. In the meantime I would like to ask counsel on both sides if they will be prepared to advise the court, looking into the evidence and all the facts and circumstances, what is to the best interests of this woman.''

The court entered an order April 27, 1913, in which it found that appellant, prior to the entry of the decree, had paid appellee $500 a month for separate maintenance, and that such payments were continued, as provided in the decree, for a period of six months after the entry of the decree; that appellant had prospered in business, and that his net assets had been increased to the extent of at least $10,000 by dividends on stocks owned by him, which dividends had been received by him since the entry of the decree; that the reasonable necessities for Norene B. Lay, according to the station in life in which she lived prior to the decree, are considerably in excess of $300 a month, and therefore the court increased the amount of alimony to $350 a month, and made an allowance of $250 as her reasonable costs and attorney's fees in the proceeding.

The sole question in the case is as to whether the action of the court in increasing the alimony was justified by the showing made. There is, of course, no doubt as to the power of a court of chancery to modify an allowance of alimony upon a proper showing, and that such an application is always addressed to the judicial discretion of the chancellor. The modification is ordinarily based upon the changed circumstances of the parties, although it may be assumed that an allowance may be altered where the amount is based upon perjured testimony· or a fraudulent misrepresentation in regard to the financial condition of the party ordered to pay the alimony. The order in the present instance is based upon a finding that appellant's income has substantially increased, and that the amount originally allowed is insufficient to maintain appellee "according to the station in life in which she lived prior to the divorce." We have no doubt that these facts would be amply sufficient to justify the court in increasing the amount of alimony allowed in a case where the wife was the aggrieved party, and the divorce was obtained on account of the fault of the husband, but we are clearly of the opinion that such findings are insufficient to warrant a chancellor in changing an allowance of alimony in such a case as the one at bar, where the divorce was granted on account of the fault of the wife, and where the allowance of alimony was clearly not based solely upon the financial ability of the husband. It is very clear that the disclosures of the husband made at the hearing prior to the entry of the decree were sufficient to justify a much larger allowance of alimony, and would have been followed by a larger allowance had the divorce been granted on account of improper conduct on the part of appellant. It therefore follows that the husband's means did not constitute the controlling factor in the fixing of the amount of alimony, and therefore, an

increase in his means would not, in itself, be sufficient to justify the court in increasing the allowance. In our opinion, it is equally clear that it is immaterial that the amount allowed is not sufficient to maintain the appellee "according to the station in life in which she lived prior to the divorce."

In *Spitler v. Spitler*, 108 Ill. 120, our Supreme Court, in passing upon the question of when alimony may be allowed, where the divorce is granted on account of the wife's misconduct, said, page 124:

"As the right to permanent alimony, so far as it depends on general law, is founded upon the duty of the husband to support the wife, it therefore legally, as well as logically, follows, that when this duty ceases the right also ceases. Hence it is generally held, in the absence of statutory provisions controlling the question, when the husband obtains a divorce on account of the misconduct of the wife, the latter will not be entitled to alimony. [2 Bishop on Marriage and Divorce (4th Ed.), secs. 376, 377.] Looking at the question on principle, the rule is certainly in harmony with other general rules governing the marital relation, as, for instance, the common-law duty of the husband to support the wife is not absolute. He is bound to support her at their common home, and not under another's roof, unless his own improper conduct has forced her to seek shelter elsewhere."

The court continued, at page 126:

"It was manifestly not the object of the Legislature, in adopting the provisions of the statute above cited, to abrogate the general principles or policy of the law relating to the subject of alimony, but rather to clothe the courts with power to mitigate occasional hardships that would otherwise occur on account of the inflexible rule that the wife is not entitled to alimony where the divorce is granted to the husband on account of her own misconduct. This modification of the general rule on the subject was intended to meet cases of hardship, and afford relief to the erring wife when demanded by mitigating circumstances, or the interest of such

of the children as might, for prudential reasons, be committed to her custody for support or education.''

The court is, therefore, of the opinion that the facts found by the chancellor were not sufficient to justify him in modifying the allowance of alimony made in the decree. The order of the Circuit Court is reversed.

*Reversed.*